# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | |
|---|---|
| SHEMIKA N. SKILLINGS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MR. BISHOP L. KNOTT, ) <br> In his individual and official capacity as ) <br> Clerk of Court for Prince George, Virginia, ) <br> ) <br> HON. WILLIAM A. SHARRETT, ) <br> In his individual and official capacity as ) <br> Judge of the Prince George Circuit Court, ) <br> ) <br> LINDA L. JOHNSON, ) <br> and ) <br> JOYCE JACKSON, ) <br> ) <br> Defendants. ) | Civil Action No. 3:17CV154–HEH |

## MEMORANDUM OPINION
### (Granting Defendants' Motions to Dismiss)

This is essentially a civil rights action filed pursuant to Title 42 U.S.C. § 1983, *et seq.*, by an unprevailing litigant in a child custody case. The Complaint encompasses a wide swath of constitutional and common law claims against the presiding judge, Clerk of Court, Deputy Clerk of Court, and Plaintiff's former husband's counsel. Under the cloak of a civil rights action, Plaintiff, proceeding *pro se*, challenges the court's award of custody to her former spouse, the court's decision to find her in contempt for failure to abide by a visitation order, and the thirty-day sentence she received. Plaintiff concludes that "Judge Sharrett habitually ruled against her without just cause or legitimate reason.

His orders [are] inconsistent with that of a reasonable person." (Compl. ¶ 44, ECF No. 1.) Plaintiff asserts that Judge Sharrett failed to credit her proof of sexual abuse and excluded relevant facts from his opinion letter. (*Id.* ¶¶ 35–37.) She also maintains that the judge found her "guilty of criminal contempt under an improper standard of proof." (*Id.* ¶ 77.) It appears, however, that no appeal was noted to the court's judgment. She seeks not only compensatory damages, but also declaratory and injunctive relief, including guidance to the state court.

With respect to the Clerk of Court Bishop L. Knott ("Clerk"), and his deputy Joyce Jackson (collectively "Clerks"), Plaintiff contends that the Clerk mischaracterized the court's finding of contempt as civil rather than criminal, resulting in her serving the entire thirty-day sentence imposed by the court without any good time deduction. (*Id.* ¶¶ 85–88.)[1] The Clerks, according to Plaintiff, also failed to follow the Federal Rules of Criminal Procedure. (*Id.* ¶¶ 60–61.)

Aside from representing her former spouse in custody proceedings, Plaintiff contends that Linda L. Johnson ("Johnson"), a private practitioner, conspired with the co-defendant state actors to violate her civil rights. (*Id.* at ¶ 6.) During the state court proceedings, Johnson filed a motion to terminate Plaintiff's parental rights and a request for a show cause hearing. (*Id.* ¶¶ 55–56, 58–59.) According to the Complaint, Johnson also filed a lawsuit against a local television station preparing to air an interview of Plaintiff concerning spousal abuse. (*Id.* ¶¶ 20, 23.) In Plaintiff's view, Johnson's actions

---

[1] Prisoners serving a sentence of twelve months or less for a misdemeanor "shall earn good conduct credit at the rate of one day for each day served." Va. Code Ann. § 53.1-116.

violated her First Amendment right to tell her life story to the press because the television station, for undisclosed reasons, decided not to air her interview. (*Id.* ¶ 47.)

Presently before the Court are Defendants' Motions to Dismiss challenging the facial sufficiency of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 5, 14, 17.) Each Defendant has filed a memorandum supporting their contention that the Complaint fails to plead plausible claims. The Honorable William A. Sharrett ("Judge Sharrett") asserts absolute judicial immunity. In addition, a careful review of the Complaint clearly reveals that the Clerks are entitled to derivative judicial immunity. Each action taken by the Clerks was within the ambit of their statutory duties to administer court records. Plaintiff filed an untimely responsive pleading entitled "Answer In Re Johnsons Motion to Dismiss" ("Answer"), addressing only the issues raised by her former husband's attorney, Linda L. Johnson.

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to her. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). But equally important in the analysis, legal conclusions enjoy no such deference by the reviewing court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive Rule 12(b)(6) scrutiny, a complaint must contain "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court acknowledges that *pro se* filings are to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *De'lonta v. Johnson*, 708 F.3d 520, 524 (4th Cir.

3

2013). However, a *pro se* complaint still must "present factual allegations that 'state a claim to relief that is plausible on its face.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). As the Fourth Circuit has explained, "[t]hough these litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

At this stage, the Court's analysis is both informed and constrained by the four corners of Plaintiff's Complaint. The Court will dispense with oral argument as it will not aid in the decisional process since the facts and legal contentions are adequately presented in the materials before the Court. For the reasons articulated below, the claims against all Defendants will be dismissed.

This lawsuit is the byproduct of a contentious custody dispute kindled by the decision of Judge Sharrett to award custody of Plaintiff's child to her former husband—after overturning the decision of the lower court. Plaintiff made several unsuccessful attempts to regain custody of her child over the ensuing four-year period. (Compl. ¶ 13.) In March of 2016, Plaintiff, by agreement with her former husband, took the child to Oklahoma. (*Id.* ¶¶ 14–15.) During that extended period of visitation, Plaintiff was arrested for kidnapping, for reasons not explained in the Complaint, even though she had agreed to return the child to Virginia. (*Id.* ¶¶ 16–17.) Upon her return to Virginia, the kidnapping charges were dismissed and a Rule to Show Cause was issued for interfering with the custody order. (*Id.* ¶¶ 18–19.) At the hearing which resulted, Plaintiff was held

in criminal contempt and sentenced to serve thirty days in jail. (*Id.* ¶¶ 24–25.) The court's reasoning is not apparent from the Complaint.

During her confinement, Plaintiff was informed that she would not receive "good time credit" which would have the effect of reducing her actual period of confinement. (*Id.* ¶ 29.) Plaintiff learned, apparently from jail personnel, "that Prince George Circuit Court had faxed to them a new disposition sheet that reflected a charge of 'civil contempt' which does not allow for good time credits." (*Id.* ¶ 30.) This transmittal forms the core claim against the Clerks.

The Complaint in this case casts a wide net, but provides scant factual support. It includes the following claims:

> Count 1: Under Title 42 U.S.C. § 1983–Intentional invidious discrimination (All Defendants);
> Count 2: Fourteenth Amendment–Denial of equal protection of the law (All Defendants);
> Count 3: Fourteenth Amendment–Erroneous process (All Defendants);
> Count 4: Fourteenth Amendment–Abuse of power (Judge Sharrett);
> Count 5: Fourteenth Amendment–Abuse of process (All Defendants);
> Count 6: Intentional infliction of emotional distress (All Defendants);
> Count 7: Breach of duty (All Defendants);
> Count 8: Fourteenth Amendment–Concerted action (All Defendants);
> Count 9: Under Title 42 U.S.C. § 1985–Conspiracy to deprive (All Defendants);
> Count 10: Under Title 42 U.S.C. § 1986–Neglect to prevent deprivation (All Defendants);
> Count 11: Fourteenth Amendment–Tortious intervention of child custody (Judge Sharrett); and
> Count 12: Fourteenth Amendment–Violation of procedural and substantive due process (All Defendants).

5

Each of the twelve causes of action alleged in Plaintiff's Complaint against Judge Sharrett arises from judicial decisions and actions taken by him in his official capacity.[2] While Plaintiff clearly contends that Judge Sharrett abused his discretion and wrongly decided her case, there is no claim that he acted beyond his statutory jurisdiction. In addition to seeking compensatory damages, Plaintiff urges this Court to declare the actions of the Prince George County Circuit Court to be unconstitutional, and to direct that court "to take necessary affirmative actions to ensure that the unlawful and unconstitutional judicial practices do not continue to affect the Plaintiff's or other's guaranteed rights under the U.S. Constitution."[3] (Compl. ¶ E.) Such review of a state court's judgment is impermissible.

"It has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions." *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). Moreover, a judge's entitlement to absolute immunity applies "even when such [judicial] acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly," *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (citation omitted), so long as such actions were not taken in the "clear absence of all jurisdiction over the subject-matter." *Id.* at 356 n.6 (citation omitted). "Like other forms of official

---

[2] Although the Complaint also implicates Judge Sharrett and the Clerk of Court in their individual capacities, the claims focus solely on decisions made in the Judge's official capacity and actions taken to facilitate his orders. Although somewhat unilluminating, the Complaint also alleges miscellaneous constitutional and common law claims against court officials.

[3] The Complaint also alleges intentional infliction of emotional distress. To plead an actionable claim for intentional infliction of emotional distress, Plaintiff must allege that the emotional distress was extreme and so severe that no reasonable person could be expected to endure it. *Harris v. Kreutzer*, 271 Va. 188, 205 (2006). The Complaint falls short of the mark.

immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). The Court in *Mireles* recognized two exceptions to the long line of cases recognizing absolute judicial immunity. These include "actions not taken in the judge's judicial capacity" and "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11–12. Neither of these exceptions is pleaded or applicable in this case.

Furthermore, Plaintiff's constitutionally veiled challenges to the decisions of the Prince George County Circuit Court awarding custody of her child to her former husband and finding her in contempt are barred from review in this Court by the *Rooker-Feldman* doctrine. The case at hand falls squarely within the narrow contours of that doctrine, namely "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The relief sought here clearly requires this Court to revisit the merits of Judge Sharrett's rulings, as well as state-court procedures.

The *Rooker-Feldman* doctrine bars such losing parties "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Id.* at 287 (internal quotation marks and citation omitted). Only the United States Supreme Court is empowered to "reverse or modify" a state court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). If Plaintiff is of the opinion that Judge Sharrett erred in granting custody of her child to her former husband

7

or finding her in contempt, she should have appealed those decisions to the Court of Appeals of Virginia or the Supreme Court of Virginia.

Turning next to the Clerks, they maintain that the Complaint fails to state a plausible claim for relief on its face and cannot survive Rule 12(b)(6) scrutiny. *Twombly*, 550 U.S. at 556. They contend that the allegations against them are simply a mosaic of legal conclusions. They point out that while a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. Moreover, they reiterate that legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678–79. While the analysis offered by the Clerks is sound, this Court need not engage in a granular review of the sufficiency of Plaintiff's allegations because the Clerks' actions are protected by derivative absolute judicial immunity.

Each of the alleged unlawful acts committed by the Clerks was undertaken in their official capacity, and there is no allegation that they were not acting at the direction of the Circuit Court Judge. Plaintiff alleges that the Clerks failed "to follow the well-established Federal Rules of Criminal Procedure,"[4] somehow denying her equal protection of the law and due process under the Fourteenth Amendment. (Compl. ¶¶ 61–62.) The other unconstitutional act underlying Plaintiff's claim is the transmittal of an amended disposition sheet to the detention facility where Plaintiff was confined. The amended court document reflected that she had been convicted of civil contempt instead

---

[4] Plaintiff alleges that the Clerks "added the show cause order to the criminal docket— but did not add the Commonwealth as the Plaintiff—as required under the Federal Rules of Criminal Procedure Rule 42(2)." (Compl. ¶¶ 57, 60–61.) The logic of this claim eludes the Court.

8

of criminal contempt. The amendment of this document, obviously reflecting the judgment of the court, allegedly violated Plaintiff's due process rights under the Fourteenth Amendment. Although the Complaint implies that the Clerks were acting in their individual, as opposed to official capacities, there are no allegations that support such contention.

Because the Clerks were acting "in obedience to a judicial order or under the court's direction," they are entitled to derivative absolute judicial immunity. *Hamilton v. Murray*, 648 Fed. App'x 344, 345 (4th Cir. 2016) (citing *McCray v. Maryland*, 456 F.2d 1, 5 (4th Cir. 1972); *Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995)); *see also Jarvis v. Chasanow*, 448 Fed. App'x 406 (4th Cir. 2011); *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993) ("[I]f immunity were not extended to clerks, courts would face the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly [would] vent their wrath on clerks.'" (citation omitted)). In the immediate case, the actions complained of were taken by the Clerks in the discharge of their lawful duties, not in neglect or violation of those duties. The deputy clerk was merely conveying a court record. Immunity applies to all acts of auxiliary court personnel that are "basic and integral part[s] of the judicial function" unless those acts are done in the clear absence of all jurisdiction. *Mullis v. U.S. Bankr. Ct. Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987).

In her Complaint, Plaintiff contends that Clerk Knott, "is also vicariously liable for damages and declaratory and injunctive relief for the acts of [Deputy Clerk] Joyce Jackson." (Compl. ¶ 7.) The doctrine of *respondeat superior* has no application to

9

alleged violations of 42 U.S.C. § 1983. In order for an individual to be liable under that statute, "it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks and citation omitted). Supervisory liability "must be based on more than the right to control employees. Likewise, simple awareness of employees' misconduct does not lead to supervisory liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (internal quotation marks and citation omitted); *see also Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 n.58 (1978).

Even if the Clerks' transmittal of the corrected case disposition documents to the detention center falls outside the ambit of derivative immunity, the mere act of conveying the court order to another public official, charged with the responsibility of carrying out its direction, had no First or Fourteenth Amendment implications. As the Defendants correctly point out, the Complaint fails to identify any constitutionally protected interests adversely affected by the Clerks. For example, with respect to her First Amendment claim, the Complaint is devoid of any reference to speech impeded by state action, a critical prerequisite to a viable claim. Similarly, her Fourth Amendment claim—that the Clerk failed to observe the Federal Rules of Criminal Procedure in docketing the show cause order—fails to disclose what protected interest was violated. (Compl. ¶ 57.)

Finally, with respect to her former husband's counsel, Linda L. Johnson, Plaintiff alleges a cascade of constitutional and common law claims both individually and as part

of a conspiracy.[5] In her Answer, Plaintiff provides some amplification to her conspiracy claims. She alleges that Johnson "often filed motions without legal sufficiency" and "'objected to' even routine court procedures . . . ." (Answer 3, ECF No. 20.) She also notes that Johnson's "overwhelming success rate before Judge Sharrett gave rise to suspicion that a conspiracy was in place." (*Id.*)

It is a well-enshrined principle of Fourteenth Amendment jurisprudence that its application is limited to state actors. It does not reach the conduct of private parties, no matter how discriminatory or harmful. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). This is not a case where the state has coerced or delegated a public function to a private citizen. *See DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999). Nor does counsel's vigorous and ultimately successful representation of her client constitute the type of collusion with the court necessary to plausibly plead state action. "[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

Plaintiff's mere recitation that Johnson's passionate representation of her client somehow violated Plaintiff's constitutional rights is insufficient to state a plausible claim under Fed. R. Civil P. 12(b)(6). To hold otherwise would chill spirited advocacy and discourage fearless representation of controversial clients.

For the foregoing reasons, this Court will grant Judge Sharrett's Motion to Dismiss on the ground that he is entitled to absolute judicial immunity. For the same

---

[5] Many of Plaintiff's common law claims are too abstract to enable a fact-specific analysis.

11

reason, it will also grant the Clerks' Motion to Dismiss. Their actions in this case are protected by derivative judicial immunity. Furthermore, no additional facts or circumstances could bring vitality to the claims asserted by Plaintiff against Judge Sharrett or the Clerks. Therefore, the claims against those Defendants will be dismissed with prejudice.

The Complaint fails to state actionable claims against Johnson. The claims against Johnson brought under 42 U.S.C. § 1983, *et seq.*, will also be dismissed with prejudice. The common law claims grounded on Virginia law against Johnson will be dismissed without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/
The Honorable Henry E. Hudson
United States District Judge

Date: April 21, 2017
Richmond, VA